IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUPERIOR TRADING, LLC, :
      Petitioner :
 :
 :
     v. : No. 07-MC-195
 : (JUDGE VANASKIE)
UNITED STATES OF AMERICA, :
DEPARTMENT OF THE TREASURY- :
INTERNAL REVENUE SERVICE, :
      Respondent :

## MEMORANDUM

This action is one of at least eleven actions in which petitions to quash IRS summonses have been filed in connection with an ongoing IRS investigation into whether the petitioners engaged in an improper tax shelter scheme involving the purchase of Brazilian debt for the purpose of harvesting "bad debt" tax deductions that were passed through to investors subject to federal taxes.  See In re: Good Karma, LLC, 528 F. Supp. 2d 1361, 1362 (J.P.M.L. 2007) (finding centralization of the actions unwarranted).  Pending before the Court are Petitioner Superior Trading, LLC's[1] Petition to Quash Summons (Dkt. Entry 1), the United States of America, Department of the Treasury, Internal Revenue Service's ("IRS") Motion to Enforce the

---

[1]Superior Trading, LCC is an Illinois limited liability company that primarily engages in business in Brazil.  (Pet. Quash, Dkt. Entry 1, ¶ 1.)

IRS Summons (Dkt. Entry 14), and Petitioner's Motion for an Evidentiary Hearing.[2]  (Dkt. Entry 29.)  For the reasons that follow, the Court will deny the Petition to Quash and the Motion for an Evidentiary Hearing, and grant the Government's Motion to Enforce IRS Summons.[3]

I.  BACKGROUND

   A.  The IRS Investigation

The IRS is currently examining the use of distress assets (including creditors' interests in debt) to shift economic losses from a tax-indifferent party to a United States taxpayer. (Coordinated Issue Paper ("CIP"), Dkt. Entry 14-4; Br. Supp. Mot. Quash, Dkt. Entry 14-5, at 8.) A distressed asset/debt ("DAD") transaction typically involves the use of a limited liability company, taxed as a partnership, to shift losses among partners entering and exiting the partnership.  (CIP, at 1.)  The United States taxpayer claims a significant tax loss that has

---

[2]On December 10, 2007, the Court heard oral argument on the IRS' Motion to Enforce the Summons.

[3]In related actions, courts across the country have uniformly denied the petitioners' Motions to Quash the Summons and granted the IRS' Motions to Enforce the Summons.  See Bodensee Fund, LLC v. United States, Civil No. 07-MC-0111, 2008 WL 1930967 (E.D. Pa. May 2, 2008); Bodensee Fund, LLC v. United States, Civil Action No. 07-3209, 2008 WL 4490361 (D.N.J. Sept. 30, 2008); Good Karma, LLC, v. United States, 546 F. Supp. 2d 597 (N.D. Ill. 2008); Sterling Trading, LLC v. United States, 553 F. Supp. 2d 1152 (C.D. Cal. 2008); Lyons Trading, LLC v. United States, No.3:07-mc-13, 2008 WL 361533 (E.D. Tenn. Feb. 8, 2008); Ironwood Trading, LLC v. United States, No. 8:07-mc-59-T-30MSS,  2008 WL 817066 (M.D. Fla. Mar. 25, 2008); Howa Trading, LLC v. United States, No. 3:07CV324-R, 2008 WL 2323872 (W.D. N.C., June 2, 2008) (Mag. J., Carl Horn, III), report and recommendation adopted by Howa Trading, LLC v. United States, Civil No. 3:07cv324, 2008 WL 4949124 (W.D. N.C., Nov. 17, 2008).

passed through the partnership to offset other income or gain.[4]  (Id.)  The transaction occurs in the following manner:

> Essentially, a foreign entity that does not pay U.S. taxes, sells purportedly high-basis, low-value debt to a U.S. entity taxed as a partnership (such as an LLC) in exchange for a payment that is a very small percentage of the face value of the debt.  In turn, the U.S. entity contributes the distressed debt to other entities taxed as partnerships, interests in which are subsequently sold to tax shelter participants.  The tax shelter participants then claim the full or a percentage of the face value of the distressed debt as a loss to offset income earned from other sources.

(Br. Supp. Mot. Quash, Dkt. Entry 14-5, at 3-4.) (internal citations omitted)

In this matter, United States taxpayer-participants purportedly engaged in these transactions with Superior Trading, and claimed losses on their federal income tax returns aggregating approximately $39,000,000 in 2003 and $119,000,000 in 2004.  (Weinger Decl., Dkt. Entry 14-2, ¶ 3.)  The DAD transactions were purportedly consumer accounts receivable obtained from one or more Brazilian retailer stores.  (Id. at ¶ 2.)

The IRS, in connection with its audit of Superior Trading for the tax years ending in December 31, 2003, and December 31, 2004, issued Information Document Requests ("IDRs") to Superior Trading.  (Id. at ¶ 9.)  The IRS made other document requests in 2006. (Id. at ¶ 10.)  Superior Trading asserts that it made every effort to comply with the requests and worked amicably with the IRS.  (Id. at ¶¶ 11 -14.)  In 2007, the IRS allegedly sent Formal Document

---

[4]For a more detailed explanation of a DAD transaction, see Coordinated Issue Paper, Dkt. Entry 14-4.

Requests ("FDRs") to Superior Trading.[5]

Based on its examination thus far, the IRS believes that Gerard A. Powell may have purchased and engaged in DAD tax shelter transactions involving Superior Trading. (Id. at ¶ 17.) According to IRS Agent Larry Weinger, Mr. Powell indirectly owned 96.04% of Superior Trading for the period ending December 31, 2003, and 98% for the period ending December 31, 2004. (Id. at 16.) Losses from Superior Trading were recognized on its respective tax returns and, because Superior Trading is a pass through entity, those losses flowed through to the Mr. Powell's individual tax returns. (Id. at ¶ 16.) These loses, according to the IRS, may be disallowed for the following reasons:

> failure to substantiate the basis of the distressed assets; failure to make a contribution within the meaning of 26 U.S.C. § 721; abuse of subchapter K of the Internal Revenue Code; step-transaction doctrine; lack of economic substance; substance over form; and lack of profit motive.

(Id. at ¶ 18.)

In order to fully examine Superior Trading's Forms 1065 Partnership Income, for the taxable period of January 1, 2003 through December 31, 2004, the IRS' Audit Team issued a summons to Mr. Powell on June 21, 2007. The IRS believes that Mr. Powell, as an investor, will have information about the receivables contributed to Superior Trading, the value of the receivables at the time of the contribution and thereafter, and the motive and business purpose

---

[5]Petitioner has filed Freedom of Information Act ("FOIA") requests in order to ascertain the source of the accusations against it. (Pet. Quash, Dkt. Entry 1, at ¶¶ 19 & 20.)

for engaging in the transaction. (Id. at ¶ 19.) The summons requires him to give testimony and produce for examination books, papers, records, and other data as described in the summons. (Id. at ¶ 7.) The information sought by the IRS falls into four categories:

> 1) documents related to legal or tax advice with respect those transactions; 2) documents related to the anticipated tax and non-tax benefits of those transactions; 3) engagement letters, invoices, and billing records for legal, management, or tax advice; and 4) correspondence and notes of discussions regarding the entity at issue in each summons.

(Weinger Decl., Dkt. Entry 14-2, ¶ 11.) Agent Weinger testified that the IRS is not in possession of the summoned information. (Id. at ¶ 10.) He also believes Mr. Powell has information about the due diligence performed by the persons and entities participating in the transactions.

### B. Superior Trading's Petition to Quash

Superior Trading has petitioned this Court to quash the summons issued to Mr. Powell by the IRS. Superior Trading claims the summons at issue "is part of a nationwide harassment effort on the part of the IRS . . . ." (Pet. Quash, at ¶ 4.) In support of its petition, Superior trading has submitted the affidavits of attorneys John E. Rogers and Sweta Shah. (Rogers Aff., Dkt. Entry 21-3; Shah Aff., Dkt. Entry 21-4.)

Superior Trading claims that the IRS investigation is not conducted for a legitimate purpose. (Pet. Quash, at ¶ 23.) It alleges that the audit is a pre-litigation discovery tool and that the IRS is using its summons power to obtain records beyond the scope of discovery. (Id.

at ¶¶ 24-25.) Mr. Rogers testified that Agent Weinger told him "that the auditors were being guided by district counsel who planned to litigate regardless of the results of the audit and notwithstanding whether petitioners were able to prove bad business debt through the audit." (Rogers Aff. ¶ 31.) Mr. Rogers further testified that the "transactions are entirely lawful." (Id. at ¶ 37.)

Superior Trading also alleges that the IRS actions are excessively burdensome and amount to harassment. The IRS allegedly threatened sanctions for non-compliance. (Pet. Quash, at ¶¶ 27-28.) Attorney Shah states she received a letter dated December 20, 2006, from IRS Agent Elise Gardner, which informed Attorney Shah that her response to previously requested information was incomplete and that "the Territory Manager will further review the matter to the Director of Practice for disciplinary proceedings." (Shah Aff. ¶ 4; see Ex. D, Dkt. Entry 21-8). According to the Petition to Quash, this was another attempt by the IRS, after months of harassing telephone calls and letters, and countless IDRs and FDRs, to intimidate Superior Trading. (Pet. Quash, at ¶ 29.) Attorney Shah further stated that IRS Agent Tabor told her that her "proposed response date for the IDRs was unacceptable and he would be forced to take action pursuant to 'Circular 20.'" (Shah Aff. ¶ 3.)

Superior Trading further contends that the information sought by the IRS is already in

6

the IRS' possession.[6]  (Pet. Quash, at ¶ 32.)  Mr. Rogers' testified that: "I made myself available to discuss details of the transaction, made documents available to the IRS and, at one meeting, made petitioners' accountant, John Gabel, available to the IRS."  (Rogers Aff. ¶ 28.)

In addition, the Motion to Quash asserts that the information sought by the IRS is available through standard audit procedures and that administrative steps required by the IRS have not been followed.  (Pet. Quash, at ¶ 36.)  Finally, Superior Trading claims the IRS summons is unconstitutional in that it deprives it of property without due process of law, violates separation of power principles, and infringes on the right to petition the government for redress of grievances in violation of the First Amendment.  (Id. at ¶ 44.)

Agent Weinger disagrees with Superior Trading's contentions.  He argues that the summons is issued for the valid purpose of determining the correctness of Petitioner's returns, and not for harassment or any improper purpose.  (Weinger Decl. ¶ 23.)  He also states that the investigation is not merely a tool to obtain discovery before litigation and that no threat of sanctions was ever made.[7]  (Id. at ¶¶ 25 & 26.)

---

[6]Superior Trading avers that it has provided the IRS with thousands of pages of documents, responsive records, DVDs and CD-ROMS containing vast amounts of information, costing more than $750,000.  (Pet. Quash, at ¶ 33.) As of October 29, 2007, Mr. Rogers claims that Superior Trading has expended $3,000,000 in complying with IRS requests for information. (Rogers Aff. ¶ 34.)

[7]Superior Trading additionally argues that the summons should be quashed because it is an attempt to extend the statute of limitations.  (Pet. Quash, at ¶ 42.)  Mr. Weinger responds that the IRS does not need to extend the statute of limitations because it has already issued a Final Partnership Administrative Adjustment ("FPAA").  (Weinger Decl. ¶ 29.)

## II. DISCUSSION

### A. The Government's Prima Facie Case

The IRS may issue a summons to ascertain the correctness of any tax return or the liability of any person under any internal revenue tax. See 26 U.S.C. § 7602. "Congress has endowed the IRS with expansive information-gathering authority; § 7602 is the centerpiece of that congressional design." U.S. v. Arthur Young & Co., 465 U.S. 805, 816 (1984). Before a summons may be enforced, the IRS must satisfy a four-step prima facie showing: (1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already within the Commissioner's possession; and (4) that the administrative steps required by the Code have been followed. United States v. Rockwell Intern., 897 F.2d 1255, 1262 (3d Cir. 1990) (citing United States v. Powell, 379 U.S. 48, 57-58 (1964)).

Once a prima facie showing is made, the burden then shifts to the taxpayer to "challenge the summons on any appropriate ground." Id. (citing Powell, 379 U.S. at 58). An "appropriate ground" is established "when the taxpayer disproves one of the four elements of the government's Powell showing, or otherwise demonstrates that enforcement of the summons will result in an abuse of the court's process." Rockwell Intern., 897 F.2d at 1262. This is a heavy burden, only satisfied under the most exceptional circumstances. Bodensee Fund, LLC, 2008 WL 1930967, at *2 (E.D. Pa.) (citing Pickel v. United States, 746 F.2d 176,

183-85 (3d Cir.1984) and United States v. Smith, No. 99-3953, 2000 WL 1175543, at *1 (6th Cir. Aug. 11, 2000)).

In this matter, to establish its prima facie case, the IRS has submitted the affidavit of IRS Agent Weinger. Superior Trading has challenged each element of the Powell test.

### 1. Legitimate Purpose

A court is required to issue a summons made "in good-faith pursuit of the congressionally authorized purposes of § 7602." United States v. LaSalle Nat'l Bank, 437 U.S. 298, 318 (1978). In this case, Agent Weinger states that the purpose of the current investigation by the IRS is to investigate the use of DAD transactions to shift economic losses from a tax-indifferent party to a United States taxpayer. (Weinger Decl. ¶ 11.) Superior Trading has been identified as a potential participant in DAD transactions. Mr. Powell purportedly owned a significant portion of Superior Trading for the tax years in question.

The Court finds that Agent Weinger's testimony of Mr. Powell's potential involvement in DAD transactions is sufficient evidence of a legitimate purpose. See Rockwell Intern., 897 F.2d at 1262 (concluding that the IRS satisfied its "Powell burden by filing a petition to enforce the summons accompanied by the sworn affidavit of" an IRS Special Agent); United States v. Garden State Nat'l Bank, 607 F.2d 61, 68 (3d Cir. 1979) (same); Badman v. United States, Misc. No. 1:MC-06-241, 2007 WL 121862, at *2 (M.D. Pa. Jan. 11, 2007) (same). Moreover, neither of the affidavits submitted by Petitioner sufficiently call into question the IRS' stated

motive. See Ironwood Trading, LLC, 2008 WL 817066, at *7 (concluding that "[t]he content of the [challenger's] affidavits is unpersuasive and irrelevant to the information sought in the Summonses" and that "such Summonses were [not] issued for a purpose inconsistent with a determination of the Petitioners' civil tax liabilities").

    2. Relevance

The IRS is not "required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." U.S. v. Arthur Young & Co., 465 U.S. 805, 814 (1984). Rather, the IRS may obtain evidence of "potential relevance to an ongoing investigation, without reference to its admissibility." Id. (emphasis in original). The evidence sought need only "'have the potential to shed some light' on the relevant tax returns." Bodensee Fund, LLC, 2008 WL 4490361, at *8 (D. N.J.) (citing Arlington Heights v. IRS, 109 F.3d 1221, 1226 (7th Cir. 1997).

Agent Weinger has testified that Mr. Powell owned a significant portion of Superior Trading during the tax years in question. Agent Weinger believes that Mr. Powell, as an investor, should have information about the receivables contributed to Superior Trading, the value of the receivables at the time of the contribution and thereafter, and the motive and business purpose for engaging in the transaction. This information could be expected to "shed light" on Superior Trading's Forms 1065 and any potential tax shelters. The four categories of summoned information described by Agent Weinger likewise are potentially relevant. Thus,

despite petitioner's arguments to the contrary,[8] the IRS has satisfied the relevance standard for its prima facie case.

### 3. Information Already in Possession of the IRS

Petitioner argues that the IRS already possesses the summoned records, and that complying with the summons "essentially seeks to double check the records" already provided. (Br. Opp'n Mot. Enforce Summons, Dkt. Entry 21, at 47.)  Agent Weinger testified, however, that the IRS does not have the summoned information.  While the IRS has obtained information from some taxpayers and third parties, neither Superior Trading nor Powell has provided the summoned records.  (Weinger Decl. ¶ 10.)

Notably, Petitioner does not dispute Agent Weinger claims.  Petitioner does not assert that Powell has already testified before the IRS or that Powell has produced any documents.  Moreover, even if Petitioner has produced the appropriate documentation through Mr. Rogers, the IRS is entitled to information from a variety of sources to develop a complete picture of relevant transactions.  See Howa Trading, LLC, 2008 WL 2323872, at *6 (citing Cohen v. United States, 306 F. Supp. 2d 495, 504 (E.D. Pa. 2004)).  Accordingly, Petitioner has not met its heavy burden in showing that the IRS is already in possession of the information.

### 4. Administrative Steps

---

[8]Petitioner's reliance on Racca v. United States, No. C06-1822RSM, 2007 WL 1108872 (W.D. Wash. April 11, 2007), and United States v. Theodore, 479 F.2d 749 (4th Cir. 1973), is misplaced for the reasons stated in Bodensee Fund, LLC, 2008 WL 4490361, at *5-6 (D. N.J.).

Petitioner asserts in a conclusory manner that the IRS has not followed the correct administrative procedures in issuing its summons.[9] (Br. Opp'n Mot. Enforce Summons, Dkt. Entry 21, at 47.) Assuming a violation of the administrative procedural requirements, Petitioner is still required to demonstrate prejudice as a result of the alleged procedural violations. Boyd v. IRS, 87 F. App'x. 481, 485, (6th Cir. 2003) (affirming a district court's dismissal of a Motion to Quash as a result of petitioner's failure to demonstrate actual or even possible prejudice); see Ironwood Trading, LLC, 2008 WL 817066, at *6 (in a related action, finding petitioners failed to show they suffered prejudice as a result of the administrative deficiencies).  Here, Petitioner has made no such showing.

In sum, through the testimony of Agent Weinger, the IRS has established its prima facie case.  This finding is consistent with that made by other courts confronted with related matters. See cases cited supra note 2.

B.  Abuse of Process

Once a prima facie case is established, the taxpayer has the burden "to negate the existence of a proper civil purpose." United States v. Genser, 582 F.2d 292, 302 n.15 (3d Cir.

---

[9]Petitioner argues that the IRS failed to provide proper notice to its legal representative as required by 26 C.F.R. § 601.506(a). See 26 C.F.R. § 601.506(a) (setting forth a procedure for giving notice to a taxpayer and its recognized representative in any matter before the IRS). (Pet. Quash, at ¶ 39; Br. Opp'n Mot. Enforce Summons, Dkt. Entry 21, at 52.)  Petitioner, however, has overlooked § 601.506(a)(3), which provides that "[f]ailure to give notice or other written communication to the recognized representative of a taxpayer will not affect the validity of any notice or other written communication delivered to a taxpayer."

1978).  "[T]he requirement of legitimate purpose means nothing more than that the government's summons must be issued in good faith pursuant to one of the powers granted under 26 U.S.C. § 7602."  Rockwell Intern., 897 F.2d at 1262.  Abuse of process is present "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."  LaSalle Nat'l Bank, 437 U.S. at 314.

In responding to the Government's prima facie case, it is clear that a taxpayer must factually oppose the Government's allegations by affidavit.  Legal conclusions or mere memoranda of law will not suffice.  Garden State Nat'l Bank, 607 F.2d at 71 (citing Thornton v. United States, 493 F.2d 164, 167 (3d Cir. 1974)).  The Third Circuit has characterized this burden as "almost insurmountable."  Garden State Nat'l Bank, 607 F.2d at 69.

Petitioner maintains that, even if the IRS establishes a prima facie case, this Court should still quash the summons because enforcement would constitute an abuse of process.  (Br. Opp'n Mot. Enforce Summons, Dkt. Entry 21, at 53.)  Specifically, Petitioner argues that the IRS has issued the summons to harass Petitioner and its attorneys, effect pre-litigation discovery, and target John Rogers as a tax shelter promoter.  None of these reasons is supported by sufficient evidence to meet Petitioner's "heavy" burden.[10]

---

[10]Superior Trading also asserts that the summons is for an illegitimate purpose because the challenged transactions were lawful, and not abusive.  (Br. Opp'n Mot. Enforce Summons, Dkt. Entry 21, at 31; see Rogers Aff. at ¶ 37 ("The transactions are entirely lawful."))  The court

Petitioner's unsupported assertions of harassment do not overcome its "almost insurmountable" burden.  The two affidavits submitted by Petitioner – one by Mr. Rogers and the other by Attorney Shah – do not support the assertions that the IRS threatened Petitioner.[11]  Attorney Shah testified that Agent Ray Tabor told her that the proposed response date for IDRs was unacceptable and he would be forced to take action pursuant to "Circular 230" (31 C.F.R. § 10.50).[12]  This alleged statement by Agent Ray Tabor does not appear to be a threat.  Nor does the letter dated December 20, 2006, admonishing that disciplinary action could be taken, constitute a threat.[13]  See Ironwood Trading, LLC, 2008 WL 817066, at *3 ("unimpressed" by the December 20, 2006 letter, labeling it a "reminder" and not a "threat.")  Moreover, Agent

---

need not address whether the transactions were lawful, however, because the IRS may issue a summons "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."  Howa Trading, LLC, 2008 WL 2323872, at *4 (citing Powell, 379 U.S. at 57).

[11] Nor do the affidavits support the assertion that the IRS used the summons to target Mr. Rogers as a tax shelter promoter.  Lyons Trading, LLC, 2008 WL 361533, at *7.

[12] "Circular 230" refers to an IRS regulation which requires practitioners to comply with information requests.  Sterling Trading, LLC, 553 F. Supp. 2d at 1158 n.1.

[13] The letter dated December 20, 2006 states:

If you do not respond to this request, we may contact the taxpayer directly under the by-pass provision in the Internal Revenue Manual and 26 CFR 601.506 (Statement of Procedural Rules).  The Territory Manager will further review the matter to the Director of Practice for disciplinary proceedings.  If necessary, we may issue a summons to secure the required information.

(Ex. D, Dkt. Entry 21-8).

Weinger testified that, following Petitioner's frequent delays, "the audit team reminded one of the entity's attorneys of her obligations as a representative before the Internal Revenue Service to timely respond to requests for information and also told her that her failure to do so in the future could result in a referral to the Director of Professional Responsibility." (Weinger Decl. at ¶ 26.) Thus, Petitioner has not met its burden in showing that it received threats from the IRS.

Finally, Petitioner contends that the IRS is using this summons as a pre-litigation tool to avoid facing the more narrow discovery rules in Tax Court, relying on PAA Management, Ltd. v. United States, Nos. 91 C 168, 91 C 169 & 91 C 170, 1992 WL 346314 (N.D. Ill. Nov. 19, 1992). The court in Sterling Trading confronted and rejected this same argument. As in Sterling Trading, the only piece of evidence in this case relevant to pre-litigation discovery is Mr. Rogers' statement "that the auditors were being guided by district counsel who planned to litigate regardless of the results of the audit and notwithstanding whether petitioners were able to prove bad business debt through the audit." (Rogers Aff. ¶ 31.) The court in Sterling Trading reasoned:

> [The petitioner] relies on PAA Management, Ltd. v. United States, 1992 WL 346314, 1992 U.S. Dist. LEXIS 17847 (N.D. Ill.1992), for the proposition that the motive to use materials obtained by summons in litigation is "substantial evidence that the summons were issued for an improper purpose." (Response to Counter-petition p. 23.) In PAA Management, however, the court found that the IRS agent explicitly admitted that the Service did not need the summoned materials for its examination, but rather that it only sought the material to "protect the government's interests" in Tax Court. PAA Management, Ltd., 1992 WL 346314 at *5-6, 1992 U.S. Dist. LEXIS 17847 at 20-21. There is no such admission here.

Sterling Trading, LLC, 553 F. Supp. 2d at 1160.

Like Sterling Trading, Petitioner has not shown that the admission in PAA Management exists in this case. Furthermore, Mr. Rogers' statement "that the 'auditors were being guided by district counsel' does not compel the conclusion that the only reason the IRS issued the summons was to obtain materials in anticipation of litigation.'" Id.

### C. Statute of Limitations

Petitioner argues that the IRS improperly issued the summons to extend the statute of limitations in order to retain audit power.[14] The issuance of a summons, however, does not toll the statute of limitations; rather, the statute is tolled by the filing of a petition to quash. See 26 U.S.C. § 7609(e)(1). Moreover, the IRS' filing of an FPAA, which tolls the statute of limitations, moots Petitioner's statute of limitations argument. Howa Trading, LLC, 2008 WL 2323872, at *8; Ironwood Trading, LLC, 2008 WL 817066, at *6.

### D. Constitutional Claims

Petitioner asserts that the information sought by the IRS summons is protected by the First Amendment, and that such requests infringe upon Petitioner's First Amendment rights to freedom of speech. (Br. Opp'n Mot. Enforce Summons, Dkt. Entry 21, at 58-59). Petitioner

---

[14]The IRS is generally authorized to audit tax returns within three years of their filing. 26 U.S.C. § 6501(a).

objects to turning over to the IRS information about legal advice, anticipated no-tax or tax benefits, and information relating to meetings, conferences, and telephone conversations. (Id. at 60.) This argument has no merit. The IRS is not seeking to enjoin Petitioner from communicating and Petitioner has failed to show why enforcement would infringe upon its First Amendment Right to freedom of speech.. See Lyons Trading, LLC, 2008 WL 361533, at *8.

Next, under the Fifth Amendment Right to Due Process, Petitioner argues that the IRS request would cost in excess of $17 million, thereby "[i]mposing such a burden on petitioner without granting the opportunity to be heard. . . ." (Br. Opp'n Mot. Enforce Summons, Dkt. Entry 21, at 60.) The Court finds that Petitioner is afforded Due Process through the statutory process for judicial review of IRS summonses set forth in the Internal Revenue Code. See Howa Trading, LLC, 2008 WL 2323872, at *9 (noting that "the Supreme Court has, on many occasions, upheld the validity of summons enforcement procedures set forth in the Internal Revenue Code.").

Finally, Petitioner argues that the IRS summons violates Article III separation of powers principles in "snuffing out any meaningful judicial review." (Br. Opp'n Mot. Enforce Summons, Dkt. Entry 21, at 64.) As noted above, a statutory process for judicial review is in place, and the very existence of this lawsuit belies Petitioner's argument.[15]  Howa Trading, LLC, 2008 WL

---

[15]Likewise without merit is Petitioner's argument that its First Amendment Right to Petition the Government for Redress of Grievances is impaired. (Br. Opp'n Mot. Enforce Summons, Dkt. Entry 21, at 62.) A process is available to a party summoned by the IRS: the

2323872, at *9.

E. Evidentiary Hearing

Petitioner argues that it is entitled to an evidentiary hearing to challenge the summons. The Third Circuit has counseled district courts that, "if . . . the taxpayer cannot refute the government's prima facie Powell showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." Garden State Nat'l Bank, 607 F.2d at 71.  Petitioner, despite having been provided the opportunity to do so, has not presented any facts to rebut the IRS' prima facie case.  An evidentiary hearing is thus unwarranted.

---

party may attempt to quash an IRS summons, as Petitioner seeks to do in this action.  See Bodensee Fund, LLC, 2008 WL 4490361, at *8 (D. N.J.).

III. CONCLUSION

For the reasons set forth in the foregoing memorandum, the Court will deny Superior Trading's Petition to Quash and Motion for an Evidentiary Hearing, and grant the Government's Motion to Enforce IRS Summons. An appropriate order follows.

                                            s/ Thomas I. Vanaskie
                                            Thomas I. Vanaskie
                                            United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUPERIOR TRADING, LLC,  :  <br>    Petitioner            : <br>                            : <br>                            : <br>    v.                     : <br>                            : <br> UNITED STATES OF AMERICA, : <br> DEPARTMENT OF THE TREASURY- : <br> INTERNAL REVENUE SERVICE, : <br>    Respondent          : | No. 07-MC-195 <br> (JUDGE VANASKIE) |

NOW, THIS 11th DAY OF DECEMBER, 2008, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Superior Trading, LLC's Petition to Quash Summons (Dkt. Entry 1) is DENIED.

2. The IRS' Motion to Enforce the Summons (Dkt. Entry 14) is GRANTED.

3. Superior Trading, LLC's Motion for an Evidentiary Hearing (Dkt. Entry 29) is DENIED.

4. The Clerk of Court is directed to mark this matter CLOSED.

                                              s/ Thomas I. Vanaskie
                                              Thomas I. Vanaskie
                                              United States District Judge